

**ORDERED in the Southern District of Florida on February 24, 2022.**

*Mindy A. Mora*
_____
**Mindy A. Mora, Judge
United States Bankruptcy Court**
_____

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### www.flsb.uscourts.gov

In re:                                                             Case No.: 21-10643-MAM
                                                                   Chapter 13
Charlotte Lockhart,

    Debtor.
_____/

### ORDER SANCTIONING (I) ATTORNEY BRIAN J. COHEN, (II) ATTORNEY JOSH ARTHUR, AND (III) THE COHEN LAW FIRM, P.A.

**THIS MATTER** came before the Court on February 1, 2022, at 11:00 a.m. (the "Show Cause Hearing") upon the *Order Directing Attorney Brian J. Cohen and the Cohen Law Firm, P.A. to Show Cause Why Sanctions Should Not Be Imposed* (ECF No. 52) (the "Show Cause Order"). Attorney Brian J. Cohen ("Cohen") and Debtor attended the Show Cause Hearing.

### BACKGROUND

The Show Cause Order directed Cohen and the Cohen Law Firm, P.A. (the

"Cohen Firm") to show cause why they should not be sanctioned for failing to properly represent Debtor's interests in this Bankruptcy Case.[1] Statements on the record by Attorney Josh Arthur ("Arthur"),[2] Cohen, and Debtor at prior hearings caused the Court to question whether any attorney at the Cohen Firm obtained Debtor's consent prior to filing the first amended plan (ECF No. 22) (the "Amended Plan").[3] The Court was troubled by Debtor's claims that she was unaware of the Amended Plan until after confirmation and simply could not afford the confirmed plan payments.[4] Once the Court reviewed the Amended Plan, the Court also became concerned that Debtor's disposable income may have been improperly calculated.

After soliciting detailed information from Arthur, Cohen, and Debtor, the Court issued the Show Cause Order. The Show Cause Order included citations to two cases addressing the proper extent to which a debtor's non-filing spouse's income is included in the calculation of a debtor's disposable income. *See In re Quarterman*, 342 B.R. 647 (Bankr. M.D. Fla. 2006) and *In re Campbell*, Case No. 17-25246-LMI, 2019 WL 722759 (Bankr. S.D. Fla. Feb. 15, 2019). Because *Quarterman* and *Campbell* are not binding upon this Court, the Show Cause Order directed submission of additional relevant case law on the calculation issue.

---

[1] The Court directed issuance of the Show Cause Order to Cohen in his capacity as the named partner of the Cohen Firm and as the signatory on the Amended Plan.

[2] Arthur is an associate at the Cohen Firm and was responsible for Debtor's representation at various court hearings.

[3] The hearings occurred on November 16, 2021 and December 21, 2021.

[4] Debtor consistently represented to the Court that she informed the Cohen Firm she could not pay in excess of $1,800 per month. The Amended Plan provided for Phase Two Plan Payments of $2,576.35 per month.

Cohen admitted that he did not review *Quarterman* or *Campbell* prior to the Show Cause Hearing. He also acknowledged that he had not performed or obtained any additional case law research to support his calculations for Debtor's Statement of Current Monthly Income and Calculation of Commitment Period (ECF No. 13, Official Form 122C-1) ("SMI"), Schedule J, or the Amended Plan. Although Cohen described the method by which he arrived at his calculations, he failed to do so in the context of prior case law. As a result, none of Cohen's representations or arguments addressed the Court's concerns regarding the applicability of *Quarterman* and *Campbell* to Debtor's Bankruptcy Case.

## ANALYSIS

The computation of Debtor's current monthly income did not follow the methodology described in *Quarterman* and *Campbell*. Because Cohen's calculation failed to limit spousal income to only that portion of the non-debtor spouse's income used for household expenses, Debtor's monthly income was overstated. Arthur and Cohen's subsequent failure to discuss increased plan payments with Debtor and obtain her signature prior to filing the Amended Plan compounded and cemented the error.[5]

Calculation Issues

Debtor's SMI included her non-filing spouse's entire monthly income but only subtracted two monthly payments for which Debtor's non-filing spouse was solely

---

[5] Debtor stated that she was rarely able to speak with an attorney at the Cohen Law Firm and instead dealt almost exclusively with paraprofessionals in her attempts to communicate regarding her case.

3

responsible.⁶ This calculation created an inaccurate impression of available funds. Debtor's SMI did not specify the portion of spousal income that was *not* regularly allocated to Debtor's household expenses.⁷ Debtor's Schedule J likewise failed to distinguish which *household* expenses were regularly paid by Debtor's non-filing spouse to justify the inclusion of Debtor's spouse's entire income in the computation of Debtor's current monthly income.⁸

The end result of these calculation errors was that Debtor appeared to have significant untapped monthly income available for plan payments. This appearance led the Chapter 13 Trustee to object to confirmation absent modification of Debtor's plan to increase the payments made for the benefit of unsecured creditors. In response to the Chapter 13 Trustee's objections, Arthur submitted the Amended Plan.

The Amended Plan increased Debtor's Phase Two Plan Payments by $581.45, resulting in payments of $2,576.35 for months 6 to 60. This amount exceeded the Debtor's actual ability to pay based upon *her* current monthly income, even taking into account any appropriate spousal contribution. *See* ECF No. 33, at 2; *see also Quarterman,* 342 B.R. at 651 ("[B]ased upon the explicit language of section 101(10A), current monthly income does not include *all* the income of the non-debtor spouse, but rather only amounts expended on a regular basis for household expenses. If income

---

⁶ See ECF No. 13, at p. 2, line 12 (total average monthly income, including spouse's full monthly income), line 13 (itemizing and totaling two expenses attributable to spouse), and line 14 (subtracting line 13 from line 12).

⁷ ECF No. 13 at p. 2 (¶ 13 "Calculate the marital adjustment").

⁸ *Quarterman,* 342 B.R. at 650-51; *Campbell*, 2019 WL 722759 at *2. Schedule J itemizes two expenses attributable to Debtor's spouse, but those expenses likely did not fall within the definition of "household expenses". ECF No. 12, p. 34 (¶ 17).

4

is not (1) expended regularly (2) on household expenses, then it is not included in the debtor's current monthly income.") (emphasis in original); *Campbell*, 2019 WL 722759 at *2 ("[T]he income of the Debtor's non-filing spouse is included in calculating the Debtor's CMI to the extent her income is used on a regular basis for household expenses.")

At this point, two unfortunate things occurred in tandem. First, Arthur and Cohen both failed to communicate with Debtor prior to submission of the Amended Plan to obtain her authorization, and, second, via confirmation of the Amended Plan, the increased payments became binding upon Debtor despite her lack of knowledge or express consent.[9] This confluence of events would not have occurred if Arthur, Cohen, and the Cohen Firm had complied with the requirements of Local Rule 9011-1(C). The fact that the Cohen Firm failed to communicate with Debtor about the Amended Plan and nonetheless submitted the Amended Plan for confirmation leads the Court to its next consideration, which is the absence of Debtor's signature upon the Amended Plan.

<u>Signature Issues</u>

Section 1322(a) of the Bankruptcy Code provides that "[t]he *debtor* may modify the plan at any time before confirmation…." 11 U.S.C. § 1322(a) (emphasis added). Local Rule 9011-1 sets forth procedures for filing documents with electronic signatures and provides, among other things, that a debtor's attorney must: (i) verify

---

[9] The Court accepts Cohen's representations on the record as an officer of the Court that no communication with Debtor occurred to ensure her consent to the Amended Plan prior to its filing, and that Debtor's actual signature on the Amended Plan was never actually obtained.

that the signer received the entire document(s) to be signed; (ii) communicate with the signer regarding the substance and purpose of the signed documents; (iii) receive back from the signer and be in possession of the entire document, including the signature page, which must contain either a digital or scanned image of the signed document; and (iv) obtain express authorization from the signer to file the document. While neither § 1322(a) nor Local Rule 9011-1 expressly state that an amended plan must contain a debtor's signature, both the Code provision and the Local Rule contemplate filing plan documents with the debtor's full knowledge and consent.[10] That did not happen here.

Cohen stated that, in filing the Amended Plan, the Cohen Firm relied upon a limited power of attorney (the "POA") contained in Debtor's engagement letter (the "Engagement Letter"). Cohen and the Cohen firm asserted that the existence of the POA and the exigencies of the situation allowed filing the Amended Plan without Debtor's knowledge or consent to the modification of the monthly plan payments.[11]

In his attempts to justify the actions of the Cohen Firm and its attorneys, Cohen contended that the POA facilitated protection of his clients' interests by permitting filing of documents on an expedited basis when necessary. Cohen downplayed the absence of explicit consent to the plan changes by pointing out that

---

[10] At the Show Cause Hearing, Cohen suggested that Local Rule 9011-1 should be restricted solely to the documents listed in subsection (A). Even if the Court were to accept that subsection A contains language of exclusion rather than illustrative non-limiting examples, the plain language of Local Rule 9011-1(A) includes "amendments". Certainly the Amended Plan would qualify under that term.

[11] The debtor signature line on the Amended Plan was blank, and Cohen's electronic signature contained clarification that he had "permission to sign on Debtor(s)' behalf".

Debtor's placed her initials next to the POA provision in the Engagement Letter.

The Court is extremely concerned by the Cohen Firm's implementation of a "representation without explanation" escape hatch provision in their form engagement letter because that practice invites abuse, as happened here. The Court can envision very limited, highly fact-specific situations in which filing documents on an expedited basis without a wet-ink signature *might* be appropriate, but those situations ought to be few and far between.

The purported exigency here, however, was nothing more than the necessity of filing an amended plan after the Chapter 13 Trustee indicated at a regular motion calendar that the prior plan was not confirmable. This sort of situation is an entirely predictable, routine occurrence in chapter 13 practice.

Local Rule 9011-1(C) requires counsel to obtain the client's express consent to the substance of the document *before* filing it. It does so for a reason. Although it is at least conceivable that unique exigencies may require an expedited filing, no situation should surpass the essential requirement of communication with a client and receipt of express consent to act on behalf of that client. And, to turn the perspective around a bit, the requirement that an attorney seek written consent protects all involved, including the attorney. Possession of the client's signature demonstrates that the filing attorney has functioned as the client's representative rather than usurping the client's role as decision-maker.

<u>Additional Considerations</u>

At the Show Cause Hearing, Cohen clarified that his firm typically obtains

7

client consent prior to filing a document. Cohen further stated that although Cohen was listed as the signatory on the Amended Plan, Arthur was the attorney responsible for filing it. Cohen could not explain way Arthur did not follow the Cohen Firm's usual practice of obtaining prior client consent.

Cohen also could not explain why he failed to read *In re Quarterman* and *In re Campbell* prior to the Show Cause Hearing or provide the Court with case law support for his methodology of calculation of Debtor's household income.

Finally, the Court would be remiss if it didn't acknowledge one point that local practitioners will be sure to raise: chapter 13 practice is, for most attorneys, a high-volume practice. It requires attorneys to be efficient, effective advocates, and it can be difficult to manage all possible details for each case. The Court is aware of the challenges and demands of chapter 13 practice. That being said, the Local Rules and concepts of professional responsibility apply to all attorneys, regardless of their chosen practice area. Engaging in a volume practice does not entitle any attorney to neglect their basic duties as advocates for their clients.

## CONCLUSION

The attorneys at the Cohen Firm failed to undertake a satisfactory analysis in calculating the extent to which Debtor's husband's income was to be included in the calculation of Debtor's current monthly income. Merely including two of Debtor's spouse's monthly expenses to compute the marital adjustment in the SMI was clearly insufficient, particularly in light of Debtor's concerns that the calculation did not

properly reflect her husband's net income and non-household expenses.[12] The Court concludes that Arthur, Cohen, and the Cohen Firm failed to properly represent Debtor by filing the Amended Plan without Debtor's authorization.[13]

Having arrived at this conclusion, the Court believes that the actions and omissions in this Bankruptcy Case warrant the imposition of compensatory and coercive sanctions under 11 U.S.C. § 105 to ensure that Arthur, Cohen, and the Cohen Firm do not repeat their mistakes.[14] Accordingly, for the foregoing reasons as well as those stated on the record at the Show Cause Hearing, it is **ORDERED** that:

1. Cohen and the Cohen Firm are SANCTIONED in the amount of $2,875.95 (the "Sanction"), which represents disbursements that the chapter 13 trustee paid to Cohen and the Cohen firm under the Amended Plan for legal services rendered to Debtor.

2. Cohen and the Cohen Firm are DIRECTED to pay the Sanction to Debtor within 10 days of the date of entry of this Order. Cohen shall file proof of such payment upon the docket in this Bankruptcy Case.

---

[12] The SMI calculation errors are glaring. Item 13 failed to account for normal and customary payroll deductions to Debtor's spouse's monthly gross income. The only adjustments listed are the non-filing spouse's car payment and a minimum credit card payment. Yet, Cohen acknowledged at the Show Cause Hearing that the marital adjustment should have accounted for all of the expenses Debtor's spouse regularly paid that were not for household expenses.

[13] The Court ultimately dismissed Debtor's case for failure to keep up with plan payments. *See* ECF No. 53.

[14] In bankruptcy proceedings, 11 U.S.C. § 105(a) provides a bankruptcy court with power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105; *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1546 (11th Cir. 1996) (citing *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1571-72 (11th Cir. 1995)).

3. Cohen and the Cohen Firm are authorized to retain only the $1,000 prepetition retainer.

4. Both Cohen and Arthur are each directed to take and complete five hours of continuing legal education courses in the area of bankruptcy or ethics within ninety (90) days of the date of this order. No later than fourteen (14) days after the date of completion of the courses, Cohen and Arthur must each file a notice certifying their attendance at the courses on the docket of this Bankruptcy Case. Cohen and Arthur must concurrently send a copy of such certification to MAM_Chambers@flsb.uscourts.gov.

5. To the extent that Arthur wishes to request a separate evidentiary hearing for the Court to reconsider his role in this Bankruptcy Case and/or the Court's imposition of sanctions pursuant to this Order, Arthur must file an appropriate motion within ten (10) days of entry of this Order.

6. The Court reserves jurisdiction over all matters arising from or relating to the implementation of this Order.

###

Copies to:

**Brian J Cohen, Esq.**
**Josh Arthur, Esq.**
The Cohen Law Firm, P.A.
1700 University Dr Suite 210
Coral Springs, FL 33071

**Charlotte Lockhart**
6591 Cobia Circle
Boynton Beach, FL 33437

**Robin R. Weiner**
POB 559007
Fort Lauderdale, FL 33355